UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PERNELL C. KELLUP** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2190** |
| **MARLIN N. GUSMAN, ET AL** | **SECTION "K"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On August 13, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.    Factual and Procedural Background**

   **A.    Original Complaint**

The plaintiff, Pernell C. Kellup ("Kellup"), an inmate housed in the Orleans Parish Prison system ("OPP"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants,[3] Orleans Parish Sheriff Marlin N. Gusman, Chief of Correction Carmen

---

[1]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 16. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

[3]Plaintiff originally named Deputy Rhodes as Captain Rhodes, and Carmen DeSaider as Carmen I DeSaider. *See* R. Doc. 6.

DeSadier, Warden Bonita Pittman, Deputy Rhodes, Sergeant K. Christian, Detention Officer Sampson, Sergeant C. Cole, Nurse, Nursing Staff, and Hospital Staff.[4] Kellup alleges several complaints regarding the conditions of confinement at the prison namely, unsanitary, rusty, and moldy tables, and molded vents and ceilings. As a result of the conditions of his confinement, Kellup seeks compensation for pain and suffering sustained while he was in the custody of the Orleans Parish Sheriff's office. He seeks monetary damages in the amount of $650,000 and punitive damages of $1.2 million.

### B.   *Spears* **Hearing**

Kellup testified that he was placed in a non-livable space in the "Tents" and then Conchetta. He complains that they were both unclean and moldy. He was housed in the tent for two weeks but did not have an asthma attack. He did however have nausea. He denies that he received any response to his sick call request. He testified that he filed a grievance but it was never responded to. He testified that he lost weight after not receiving his HIV medication during that week period. He felt denied. He testified that he takes a pill that combines all three of substances in one which is different than what he use to get. He testified that he does not know his CD4 levels which would indicate the status of his HIV.

Kellup testified that he was housed in in Conchetta, three or four days. He did not have an asthma attack or dizziness while in Conchetta. He was however congested. He did not however make a request for medical care while in Conchetta.

---

[4]Local governing bodies are "persons" within the meaning of § 1983 and therefore, are subject to suit under that provision. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, a governmental body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible." *Id.* Kellup however did not allege claim against the governing body such as Orleans Parish.

He confirmed that after he was moved to Templeman Detention Center ("TDC") where he participated in the re-entry program, his shortness of breath improved, that he did not experience any asthma attack and that it was a cleaner facility. He was in TDC for one month until he was attacked by another inmate and he was put out of the re-entry program. He was placed in Templeman 5 and he was there for one week at the time of the *Spears* hearing. He confirmed that he did not experience any dizziness, shortness of breath, or asthma attack since he moved to Templeman 5.

He testified that he sued the sheriff because he was over the jail. He sued Carmen DeSadier because she was a part of the staff. He sued but did not know Warden Bonita Pittman, Deputy. Rhodes, Sgt. K. Christian, Detention Officer Sampson, Sgt. C. Cole because they run the jail. He also sued the nurse, nursing staff, and the hospital staff. Kellup confirmed that he never went to the hospital and that he did not mean to sue any hospital. He sued the nurse and nursing staff because he was without his medicine for one week. He testified that he would not lie about having HIV. Kellup felt that the nursing staff should have given him his medication at his request before they confirmed that he was diagnosed with HIV.

Kellup testified that he was extradited to Louisiana on a marijuana charge. He has had his trial and he pled guilty and received a one year sentence. He testified that he seeks compensation for pain and suffering and the overall stress level of being incarcerated in Templeman.

## II.     Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other*

*grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. Analysis

#### A. No Basis for Liability

Kellup asserts that the conditions of his confinement at Conchetta were unsanitary, including mold, which affected his ability to breath. As outlined previously, Kellup named the defendants, Sheriff Gusman, Chief of Correction Carmen DeSadier, Warden Bonita Pittman, Deputy Rhodes, Sergeant K. Christian, Detention Officer Sampson, Sergeant C. Cole, Nurse and Nursing Staff, and Hospital Staff. Kellup acknowledged that he did not know why he sued all of the defendants except for Gusman. As for Gusman, he was sued because he is "over the jail."

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

Kellup has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman or the ranking officers that would create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Kellup has not alleged a personal action or connection that would render Sheriff Gusman liable. For these reasons, Kellup claims against the defendants as supervisory officials over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### B.     Conditions of Confinement

Even if Kellup had identified a proper defendant, he has not alleged or established a constitutional violation resulting from the conditions in Conchetta in order to recover under § 1983. As a result the claims against each of the defendants should be dismissed.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and

have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Kellup has not alleged a constitutional violation based on the conditions in Conchetta.

The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). To the extent Kellup asserts that these factors were present, he has not stated a constitutional violation.

Furthermore, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was

insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011).

Thus, Kellup's allegations about mold and dampness fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.).

For the foregoing reasons, Kellup claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

### C.  **Medical Indifference**

Kellup contends he was denied medical attention when his HIV medication was delayed one week pending confirmation that he has HIV. He testified that although he experienced nausea he did not receive a response to his sick call request and his grievance was denied.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's

needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983"). *See Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In the case at bar, Kellup does not allege facts sufficient to rise to the level of a constitutional violation. Accepting his allegations as true, Kellup alleges that despite his request for his HIV medication that it was delayed for one week. He complains that they should have

accepted his statement that he was previously diagnosed with HIV rather than confirm his medical condition.   Therefore, even though Kellup complains that there was originally a one week delay in receiving the HIV medication, the Court finds that these claims do not constitute deliberate indifference.

While Kellup is entitled to adequate medical care, he is not entitled to the treatment of his choice. Therefore, the Court finds that the deliberate indifference claim arising out of the medical care Kellup received is frivolous or fails to state a claim for which relief may be granted, pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I) and §1915(b)(1).

## IV. Recommendation

It is therefore **RECOMMENDED** that Pernell Kellup's § 1983 claims against the defendants, Orleans Parish Sheriff Marlin N. Gusman, Chief of Correction Carmen DeSadier, Warden Bonita Pittman, Deputy Rhodes, Sergeant K. Christian, Detention Officer Sampson, Sergeant C. Cole, Nurse, Nursing Staff, and Hospital Staff be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 9th day of June, 2016.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.